Barbara A. Rohr SBN 273353
Email: brohr@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885

Richard W. Gonnello (*pro hac vice* forthcoming)
Email: rgonnello@faruqilaw.com
Sherief Morsy (*pro hac vice* forthcoming)
Email: smorsy@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Shinu Gupta*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHINU GUPTA, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>SNAP INC., EVAN SPIEGEL, ANDREW VOLLERO, MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS, & CO., J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, ALLEN & COMPANY LLC, BTIG, LLC, C.L. KING & ASSOCIATES, INC., CITIGROUP GLOBAL MARKETS INC., CONNAUGHT (UK) LIMITED, COWEN AND COMPANY, LLC, EVERCORE GROUP, LLC, JEFFERIES LLC, JMP SECURITIES LLC, LIONTREE ADVISORS LLC, LUMA SECURITIES LLC, MISCHLER FINANCIAL GROUP, INC., OPPENHEIMER & CO., INC., RBC CAPITAL MARKETS, LLC, SAMUEL A. RAMIREZ & CO., INC., STIFEL FINANCIAL CORP., SUNTRUST ROBINSON HUMPHREY, INC., THE WILLIAMS CAPITAL GROUP, L.P., UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>        Defendants. | No. 2:17-cv-5054<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

The allegations in this Securities Class Action Complaint ("Complaint")[1] are based on the personal knowledge of Shinu Gupta ("Plaintiff"), as to Plaintiff's own acts, and are based upon information and belief as to all other matters alleged herein. Plaintiff's information and belief is based upon the investigation by Plaintiff's counsel into the facts and circumstances alleged herein, including: (i) review and analysis of those public filings Snap, Inc. ("Snap" or the "Company") made with the United States Securities and Exchange Commission ("SEC") referenced herein; (ii) review and analysis of those press releases, analyst reports, public statements, news articles, and other publications referenced herein disseminated by or concerning Snap, the Underwriter Defendants, and the other Individual Defendants named herein (together with Snap, the "Defendants"); (iii) review and analysis of those Company conference calls, press conferences, and related statements and materials referenced herein; and (iv) review and analysis of those other documents referenced herein.  Many additional facts supporting the allegations are known only to Defendants and/or are within their exclusive custody or control.  Plaintiff believes that additional evidentiary support for the allegations will emerge after a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION

1.     Subject to certain exclusions, this is a federal securities class action brought on behalf of a class consisting of all persons and entities who purchased or otherwise acquired Snap common stock: (1) pursuant and/or traceable to Snap's false and misleading Registration Statement, issued in connection with the Company's initial public offering on or about March 2, 2017 (the "IPO" or the "Offering"); and/or (2) on the open market between March 2, 2017 and June 6, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of

---

[1]     All internal citations and quotations are omitted and all emphases are added unless otherwise noted.

the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Snap is a camera company whose principal product is Snapchat, a free mobile chatting application.  Snap generates revenue from Snapchat by delivering advertisements to Snapchat users.  Thus, to increase its advertising business revenue, Snap must grow user engagement of its Snapchat application.

3.      Snap filed its final amended Registration Statement for the IPO on February 27, 2017, which the SEC declared effective on March 1, 2017.

4.      At the time of Snap's IPO, the Company was experiencing a slowdown in the growth of Snapchat's key user engagement metrics, including Daily Active Users ("DAUs") (*i.e.*, Snapchat users who open the application at least once a day). Despite this adverse fact, the Registration Statement promised, *inter alia*, "rapid" growth of Snap's advertising business, and stated that Snap analyzed its growth trends by "regularly review[ing]" key performance indicators ("KPIs") such as the number of Snapchat's DAUs.

5.      On March 2, 2017, Snap commenced its IPO, and raised approximately $3.91 billion in gross proceeds.

6.      The truth began to emerge on May 10, 2017, when the Company announced its financial results for the first financial quarter of 2017.  Snap announced, *inter alia*, that its DAU grew by only 5% for the first quarter of 2017, and a net income loss of $2.21 billion, which disappointed investors.

7.      On this news, Snap's share price fell $4.93, or approximately 21%, from the previous trading day's closing price of $22.98, to close at $18.05 on May 11, 2017.

8.      Then, on May 16, 2017, a former Snap employee, Anthony Pompliano, filed a whistleblower lawsuit alleging that the Company falsely represented its user

engagement metrics, including DAU, and recklessly calculated its user metrics, and that he was terminated when he alerted Snap's management about these problems.

9.      Then, on June 7, 2017, Nomura Instinet revealed that worldwide downloads of Snapchat for the months of April and May 2017 were down 22% from the year prior, confirming that DAU growth was overstated or misleadingly described.

10.     On this news, Snap's share price fell $0.80, or approximately 4%, from the previous trading day's closing price of $20.36, to close at $19.56 on June 7, 2017.

11.     Unbeknownst to investors, the true facts which were known and/or recklessly disregarded by Snap and its officers, but concealed from the investing public in the Registration Statement and during the Class Period, were the following:

   a) Snap's calculations of its user engagement metrics, including Snapchat's DAUs, were false and misleading; and

   b) As a result, Snap's reported growth in user engagement metrics, such as DAU, was overstated or misleading.

**JURISDICTION AND VENUE**

12.     This action arises under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and SEC Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331.

14.     Venue is proper in this District pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1391(b), as certain of the acts and conduct complained of herein, including

1  dissemination or omission of materially false and misleading information to the
2  investing public, occurred in this District.

3      15.    In connection with the acts alleged in this Complaint, Defendants,
4  directly or indirectly, used the means and instrumentalities of interstate commerce,
5  including, but not limited to, the mails, interstate telephone communications, the
6  Internet, and the facilities of the national securities markets.

7                              **PARTIES**

8  **A.    The Plaintiff**

9      16.    Plaintiff purchased Snap common stock: (1) pursuant to and/or traceable
10 to the untrue and misleading Registration Statement for the IPO, and was damaged
11 thereby; and (2) at artificially inflated prices during the Class Period and was damaged
12 thereby when the truth was revealed.

13 **B.    The Defendants**

14         **1.    The Company**

15     17.    Defendant Snap is a Delaware corporation with its principal executive
16 offices located at 63 Market Street, Venice, California 90291.  During the Class
17 Period, the Company's stock was traded on the New York Stock Exchange ("NYSE")
18 under the ticker symbol "SNAP."

19         **2.    The Individual Defendants**

20     18.    Defendant Evan Spiegel ("Spiegel") was at all relevant times the Chief
21 Executive Officer ("CEO"), director, and founder of Snap.

22     19.    Defendant Andrew Vollero ("Vollero") was at all relevant times the
23 Chief Financial Officer ("CFO") of Snap.

24     20.    Defendants Spiegel and Vollero are collectively referred to herein as the
25 "Individual Defendants."

26     21.    The Individual Defendants, because of their positions with the Company,
27 possessed the authority to control, correct, and/or update the contents of Snap's public

28                              4

disclosures to the market.  Each of the Individual Defendants had the duty to exercise due care and diligence and the duty of full and candid disclosure of all material facts relating to the Company's financial results and operations.  The Individual Defendants further had the duty to correct and/or update any previously issued statements that were untrue or became materially misleading or untrue, so that the market price of the Company's publicly traded common stock would be based upon truthful, complete, and accurate information.  To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the dissemination of information concerning the Company's financial results and operations.  By virtue of such duties, these officers and directors were required, *inter alia*, to:

      a)    conduct and supervise the business of Snap in accordance with federal laws;

      b)    supervise the preparation of Snap's SEC filings and approve any reports concerning Snap's financial reporting and the results; and

      c)    ensure that Snap established and followed adequate internal controls.

22.    As officers, directors, and/or controlling persons of a publicly-held company which is registered with the SEC under the federal securities laws and the securities of which were traded on the NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to (1) promptly disseminate complete, accurate and truthful information with respect to the Company's financial statements and operations; (2) correct any previously issued statements that were materially misleading or untrue so that the market could accurately price the Company's publicly traded securities based upon truthful, accurate, and complete information; and (3) update any previously-issued forward-looking statements that became materially misleading or untrue so that the market

1  could accurately price the Company's publicly traded stock based upon truthful,

2  accurate, and complete information.

3      23.     The Individual Defendants are each primarily liable for their respective

4  misrepresentations and misleading statements alleged herein and are also liable as

5  controlling persons of Snap.

6      24.     The Company is liable for the acts of the Individual Defendants and other

7  Company employees under the doctrine of *respondeat superior* and common law

8  principles of agency, as those persons were acting as the officers, directors, and/or

9  agents of Snap in taking the actions alleged herein.

10     25.     The scienter of the Individual Defendants and other employees and

11  agents of the Company is imputed to the Company under *respondeat superior* and

12  agency principles.

13          **3.     The Underwriter Defendants[2]**

14     26.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") acted as an

15  underwriter of the IPO.  Morgan Stanley is headquartered at 1585 Broadway, New

16  York, NY 10036.

17     27.     Defendant Goldman, Sachs & Co. ("Goldman") acted as an underwriter

18  of the IPO.  Goldman is headquartered at 200 West Street, 29th Floor, New York, NY

19  10282.

20     28.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") acted as an

21  underwriter of the IPO.  J.P. Morgan is headquartered at 277 Park Avenue, New York,

22  NY 10172.

23     29.     Defendant Deutsche Bank Securities, Inc. ("Deutsche Bank") acted as an

24  underwriter of the IPO.  Deutsche Bank is headquartered at 60 Wall Street, New York,

25  NY 10005.

26

27  [2]     *See* Snap, Form 424B4, at 174 (Mar. 3, 2017).

28

30.     Defendant Barclays Capital Inc. ("Barclays") acted as an underwriter of the IPO.  Barclays is headquartered at 745 7th Avenue, New York, NY 10019.

31.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") acted as an underwriter of the IPO.  Credit Suisse is headquartered at 11 Madison Avenue, 24th Floor, New York, NY 10010.

32.     Defendant Allen & Company LLC ("Allen") acted as an underwriter of the IPO.  Allen is headquartered at 711 5th Avenue, #9, New York, NY 10022.

33.     Defendant BTIG, LLC ("BTIG") acted as an underwriter of the IPO. BTIG is headquartered at 600 Montgomery Street, 6th Floor, San Francisco, CA 94111.

34.     Defendant C.L. King & Associates, Inc. ("C.L. King") acted as an underwriter of the IPO.  C.L. King is headquartered at 9 Elk Street, Albany, NY 12207.

35.     Defendant Citigroup Global Markets Inc. ("Citigroup") acted as an underwriter of the IPO.  Citigroup is headquartered at 390-388 Greenwich Street, New York, NY 10013.

36.     Defendant Connaught (UK) Limited ("Connaught") acted as an underwriter of the IPO.  Connaught is headquartered at 31 St. James's Square, London, England, SW1Y 4JJ.

37.     Defendant Cowen and Company, LLC ("Cowen") acted as an underwriter of the IPO.  Cowen is headquartered at 599 Lexington Avenue, New York, NY 10022.

38.     Defendant Evercore Group LLC ("Evercore") acted as an underwriter of the IPO.  Evercore is headquartered at 55 East 52nd Street, 38th Floor, New York, NY 10055.

39.     Defendant Jefferies LLC ("Jefferies") acted as an underwriter of the IPO. Jefferies is headquartered at 520 Madison Avenue, 10th Floor, New York, NY 10022.

40.     Defendant JMP Securities LLC ("JMP") acted as an underwriter of the IPO.  JMP is headquartered at 600 Montgomery Street, Suite 1100, San Francisco, CA 94111.

41.     Defendant LionTree Advisors LLC ("LionTree") acted as an underwriter of the IPO.  LionTree is headquartered at 660 Madison Avenue, New York, NY 10065.

42.     Defendant LUMA Securities LLC ("LUMA") acted as an underwriter of the IPO.  LUMA is headquartered at 101 5th Avenue, Suite 900, New York, NY 10003.

43.     Defendant Mischler Financial Group, Inc. ("Mischler") acted as an underwriter of the IPO.  Mischler is headquartered at 1111 Bayside Drive, Suite 100, Newport Beach, CA 92625.

44.     Defendant Oppenheimer & Co., Inc. ("Oppenheimer") acted as an underwriter of the IPO.  Oppenheimer is headquartered at 85 Broad Street, New York, NY 10004.

45.     Defendant RBC Capital Markets, LLC ("RBC") acted as an underwriter of the IPO.  RBC is headquartered at 200 Vesey Street, 3 World Financial Center, 9th Floor, New York, NY 10281.

46.     Defendant Samuel A. Ramirez & Co., Inc. ("Ramirez") acted as an underwriter of the IPO.  Ramirez is headquartered at 61 Broadway, Suite 2924, New York, NY 10006.

47.     Defendant Stifel Financial Corp. ("Stifel") acted as an underwriter of the IPO.  Stifel is headquartered at One Financial Plaza, 501 North Broadway, 2nd Floor, St. Louis, MO 63102.

48.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") acted as an underwriter of the IPO.  SunTrust is headquartered at 3333 Peachtree Road, Northeast Atlanta, GA 30326.

49.     Defendant The Williams Capital Group, L.P. ("Williams Capital") acted as an underwriter of the IPO. Williams Capital is headquartered at 650 5th Avenue, 9th Floor, New York, NY 10019.

50.     Defendant UBS Securities LLC ("UBS") acted as an underwriter of the IPO. UBS is headquartered at 1285 Avenue of the Americas, New York, NY 10019.

51.     Defendant William Blair & Company, L.L.C. ("William Blair") acted as an underwriter of the IPO. William Blair is headquartered at 222 West Adams Street, Chicago, IL 60606.

52.     The defendants enumerated in ¶¶25-50 are collectively referred to herein as the "Underwriter Defendants."

53.     The Company, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as the "Defendants."

54.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement. Representatives of the Underwriter Defendants assisted Snap and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable due diligence investigation into the business and operations of Snap. As part of their due diligence investigation the Underwriter Defendants had continuous access to confidential corporate information concerning Snap's user engagement metrics and met with Snap's lawyers, management, and top executives. As a result, a reasonable due diligence investigation would have revealed the misleading statements and omissions contained in the Registration Statement, as detailed herein.

55.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to Plaintiff and other members of the Class who purchased shares traceable to the Registration Statement, after having failed to disclose the misleading statements and omissions in the Registration Statement.

# FACTUAL BACKGROUND

56.     Snap is a camera company, whose flagship product is Snapchat.  Snap, Form S-1/A Registration Statement, at 1 (Feb. 24, 2017) ("Registration Statement").  Snapchat is a free camera application which helps users communicate through short videos and images.  *Id.*  Snap generates revenue by monetizing user engagement of Snapchat via advertising.  *Id.* at 2.

57.     One of the critical metrics Snap uses to measure user engagement is the DAU metric.  Registration Statement at 50.  DAU is defined as "a registered Snapchat user who opens the Snapchat application at least once during a defined 24-hour period."  Registration Statement at 50.

58.     On February 2, 2017, Snap filed its Form S-1 registration statement with the SEC in connection with the IPO.  Snap filed subsequent amendments to the Form S-1, with the final amended Registration Statement filed with the SEC on February 27, 2017.  On March 1, 2017, the SEC declared the Registration Statement effective.  The Registration Statement stated, *inter alia*, that Snap's "advertising business [was] still young but growing rapidly[,]" and that "adding, maintaining, and engaging Daily Active Users have been and will continue to be necessary."  Registration Statement at 4, 15.

59.     Snap common shares began trading on the NYSE on March 2, 2017 under the symbol "SNAP."  Press Release, *Snap Inc. Announces Pricing of Initial Public Offering*, https://investor.snap.com/news-releases/2017/03-01-2017-220740261 (Mar. 1, 2017).  The final prospectus was subsequently filed with the SEC on March 3, 2017.  Snap and the IPO's underwriters sold 230,000,000 shares of Snap common stock, raising gross proceeds of $3.91 billion from the IPO.  Press Release, *Snap Inc. Announces Closing of Initial Public Offering and Full Exercise of Underwriters' Option to Purchase Additional Common Stock*, https://investor.snap.com/news-releases/2017/03-07-2017-210448059 (Mar. 7, 2017).

60.     Two months after the IPO, on May 10, 2017, Snap issued a press release announcing the Company's first quarter financial results for the quarter ended March 31, 2017.  Press Release, *Snap Inc. Reports First Quarter 2017 Results*, https://investor.snap.com/news-releases/2017/05-10-2017-210059250 (May 10, 2017). Snap reported a net loss of $2.21 billion, or $2.31 per diluted share, and revenue of $149 million, compared to a net loss of $104.58 million, or $0.14 per diluted share, and revenue of $38.8 million for the same period in the prior year.  *Id.*  Snap also reported that its DAU grew from 158 million in the previous quarter to 166 million in Q1 2017, a 5% increase.  *Id.*

61.     Investors were troubled by the "slowing user growth."  Seth Fiegerman, CNN Tech, *Snap, crackle, drop*, http://money.cnn.com/2017/05/10/technology/snapchat-earnings/index.html (May 10, 2017).  Snap's DAU of 166 million fell short of the "167.3 million that Wall Street was expecting." Greg Hoffman, Business Insider, *Millenial investors are getting whacked after Snap's big miss (SNAP)*, http://markets.businessinsider.com/news/stocks/snap-stock-price-millennial-investors-are-getting-whacked-after-earnings-miss-2017-5-1002001082-1002001082 (May 10, 2017.

62.     On this news, Snap's share price fell $4.93, or approximately 21%, from the previous trading day's closing price of $22.98, to close at $18.05 on May 11, 2017.

63.     Then, on May 16, 2017, former Snap employee Anthony Pompliano filed a lawsuit against the Company in the United States District Court, Central District of California.  *Pompliano v. Snap, Inc., et al.*, No 2:17-cv-03664, ECF No. 1 (C.D. Cal. May 16, 2017) ("*Pompliano* Complaint").  In his complaint, Pompliano alleges that he was hired by Snap to run Snapchat's "user growth and engagement team[.]"  *Id.* at ¶6. While at Snap, Pompliano learned that the Company was using "false [growth]

metrics in representations to advertisers, the public, and to private investors when raising capital[.]" *Id.* at ¶7. He also alleges that Snap "is reckless as to the calculation of its KPIs and has virtually no internal controls in place to verify their accuracy." *Id.* at ¶30. Specifically, Pompliano's complaint lists DAU and application installations as examples of "key performance indicators" or "KPIs." *Id.* at ¶29. Pompliano asserts that he was fired "three weeks into his tenure at" Snap as a result of alerting management, including Vollero, of these false metrics. *Id.* at ¶¶7-11.

64.     On June 7, 2017, Nomura Instinet analyst Anthony DiClemente ("Nomura") reported that an analysis of application download data from *SensorTower*, a company that tracks application analytics, pointed to a year-over-year deterioration in Snapchat application download trends. TheFly.com, *Snap download trends deteriorated thus far in Q2, says Nomura Instinet*, https://thefly.com/landingPageNews.php?id=2563446&headline=SNAP;FB-Snap-Facebook-analyst-commentary- (June 7, 2017). Specifically, Nomura revealed that worldwide downloads of Snapchat for the months of April and May were down 22% from the year prior. *Id.* The decline in Snapchat downloads uncovered by Nomura confirmed "***a slowdown in growth of daily active users***." CNBC, *Data showing plummeting app downloads should worry Snap shareholders*, http://www.cnbc.com/2017/06/07/data-showing-plummeting-app-downloads-should-worry-snap-shareholders.html (June 7, 2017).

65.     On this news, Snap's share price fell $0.80, or approximately 4%, from the previous trading day's closing price of $20.36, to close at $19.56 on June 7, 2017.

# FALSE AND MISLEADING STATEMENTS[3]

66.     On March 2, 2017, Snap commenced its IPO pursuant to the Registration Statement.  Snap's Registration Statement, which was signed by the Individual Defendants, stated in relevant part:

> ***Our advertising business is still young but growing rapidly.***  For the year ended December 31, 2016, we recorded revenue of $404.5 million, as compared to revenue of $58.7 million for the year ended December 31, 2015, representing a year-over-year increase of more than 6x.  Our global average revenue per user, or ARPU, in the three months ended December 31, 2016 was $1.05, compared to $0.31 for the same period in 2015.  In North America, our ARPU in the three months ended December 31, 2016 was $2.15 compared to $0.65 for the same period in 2015.  For the year ended December 31, 2016, we incurred a net loss of $514.6 million, as compared to a net loss of $372.9 million for the year ended December 31, 2015.  For the year ended December 31, 2016, our Adjusted EBITDA was $(459.4) million, as compared to $(292.9) million for the year ended December 31, 2015.  For the year ended December 31, 2016, net cash used in operating activities was $611.2 million as compared to $306.6 million for the year ended December 31, 2015.  For the year ended December 31, 2016, our Free Cash Flow was $(677.7) million as compared to $(325.8) million for the year ended December 31, 2015.

> * * *

> Our ecosystem of users, advertisers, and partners depends on the engagement of our user base.  We anticipate that the growth rate of our user base will decline over time.  ***If we fail to retain current users or add new users, or if our users engage less with Snapchat, our business would be seriously harmed.***

> * * *

---

[3]     Although many statements by the Defendants are listed in this section and are provided for context, the statements being challenged as false and/or misleading are those statements that are ***bolded and italicized*** for emphasis.

We had 158 million Daily Active Users on average in the quarter ended December 31, 2016, and we view Daily Active Users as a critical measure of our user engagement. ***Adding, maintaining, and engaging Daily Active Users have been and will continue to be necessary***. We anticipate that our Daily Active Users growth rate will decline over time if the size of our active user base increases or we achieve higher market penetration rates. If our Daily Active Users growth rate slows, our financial performance will increasingly depend on our ability to elevate user engagement or increase our monetization of users. If current and potential users do not perceive our products to be fun, engaging, and useful, we may not be able to attract new users, retain existing users, or maintain or increase the frequency and duration of their engagement.

\* \* \*

***We regularly review metrics, including our Daily Active Users and ARPU metrics, to evaluate growth trends, measure our performance, and make strategic decisions. These metrics are calculated using internal company data and have not been validated by an independent third party. While these numbers are based on what we believe to be reasonable estimates of our user base for the applicable period of measurement, there are inherent challenges in measuring how our products are used across large populations globally.***

67.     The statements in ¶65 above were false and/or misleading when made because Snap, Spiegel, and Vollero knowingly or recklessly disregarded the following material facts that they failed to disclose:

> a)     Snap's calculations of its user engagement metrics, including Snapchat's DAUs, were false and misleading (¶¶60-63); and
>
> b)     As a result, Snap's reported growth in user engagement metrics, such as DAU, was overstated and misleading (¶¶60-63).

### THE TRUTH BEGINS TO EMERGE

68.     When the truth emerged regarding Snap's slowed DAU growth, the price of Snap's stock declined as the market processed these previously undisclosed facts. The following corrective disclosures removed a portion of the artificial inflation in the price of Snap's common stock and directly and proximately caused Plaintiff and other Class members to suffer damages. On May 10, 2017, when Snap announced its first quarter results and meager 5% DAU growth, shares of Snap common stock closed at $18.05, a one-day decline of approximately 21% from the prior trading day. ¶¶59-61.

Then, on June 7, 2017, when Nomura revealed that worldwide downloads of Snap's application for the months of April and May were down 22% from the year prior, which confirmed that Snap overstated and misled investors regarding its DAU growth, shares of Snap common stock closed at $19.56, a one-day decline of approximately 4% from the prior trading day.  ¶¶63-64.

69.     Defendants' false and misleading statements and omissions in their SEC filings and other public statements during the Class Period directly and proximately caused losses to Plaintiff and the Class.  As a result of their purchases of Snap stock during the Class Period at artificially inflated prices, Plaintiff and other Class members suffered damages as the true facts were revealed.

70.     Until shortly before Plaintiff filed this Complaint, he was unaware of the facts alleged herein and could not have reasonably discovered the Defendants' misrepresentations and omissions by the exercise of reasonable diligence.

## CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all persons and entities who purchased or otherwise acquired Snap common stock: (1) pursuant and/or traceable to Snap's false and misleading Registration Statement, issued in connection with Snap's IPO, and were damaged thereby, seeking to pursue remedies under the Securities Act; and/or (2) during the Class Period, and were damaged thereby, seeking to pursue remedies under the Exchange Act, *i.e.*, the "Class".

72.     Excluded from the Class are the Defendants named herein, members of their immediate families, any firm, trust, partnership, corporation, officer, director, or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of such excluded persons.

73.     The members of the Class are so numerous that joinder of all members is impracticable.  During the Class Period, Snap securities were actively traded, including on the NYSE.  While the exact number of Class members cannot be determined at this early stage, Plaintiff believes that thousands of people purchased Snap common stock during the Class Period.  Record owners and other members of the Class may be identified from records maintained by Snap or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

74.     Plaintiff's claims are typical of the claims of the other members of the Class.  All members of the Class were similarly affected by Defendants' allegedly wrongful conduct in violation of the Securities Act and the Exchange Act as complained of herein.

75.     Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action and securities litigation.  Plaintiff has no interests that are contrary to or in conflict with those of the Class.

76.     Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. The questions of law and fact common to the Class include, *inter alia*:

a)      Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)       Whether publicly disseminated statements made by Defendants during the Class Period contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

c)     Whether and to what extent Defendants' material untrue statements and/or omissions of material fact caused the market price of Snap's common stock to be artificially inflated during the Class Period;

d)     Whether Snap and/or the Individual Defendants acted with the requisite level of scienter in issuing false and misleading statements;

e)     Whether the Individual Defendants were controlling persons of Snap; and

f)     Whether the Class members have sustained damages, and if so, the proper measure of damages.

77.     Plaintiff knows of no difficulty that will be encountered in the management of this action that would preclude its maintenance as a class action.

78.     A class action is superior to all other available methods for the fair and efficient adjudication of this action because, among other things, joinder of all members of the Class is impracticable.  In addition, since the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it nearly impossible for members of the Class to bring individual actions.

79.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a)     Snap's common stock was listed and actively traded on the NYSE, a highly efficient market;

b)     As a registered and regulated issuer of securities, Snap filed periodic reports with the SEC, in addition to the frequent voluntary dissemination of information;

c)     Snap regularly communicated with public investors through established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures such as

17

communications with the financial press and other similar reporting services;

d)   Approximately 12 analysts[4] followed Snap's business and wrote reports which were publicly available and affected the public marketplace;

e)   The market reacted to public information disseminated by and about Snap;

f)   The material misrepresentation and omissions alleged herein would tend to induce a reasonable investor to overvalue Snap's stock; and

g)   Without knowledge of the misrepresented or omitted facts, Plaintiff and other members of the Class purchased or otherwise acquired Snap common stock between the time that the Defendants made the material misrepresentations and omissions, and the time that the truth was revealed, during which time the price of Snap common stock was artificially inflated by Defendants' misrepresentations and omissions.

h)   As a result of the above, the market for Snap securities promptly digested current information with respect to the Company from all publicly available sources and reflected such information in the securities' prices. The historical daily trading prices and volumes of Snap securities are incorporated herein by reference.  Under these circumstances, all those who purchased or otherwise acquired Snap common stock during the Class Period suffered similar injuries through their purchases or acquisitions of common stock at prices which were artificially inflated by Defendants' misrepresentations and omissions.  Thus, a presumption of reliance applies.

---

[4]   Nasdaq, Analyst Firms Making Recommendations, http://www.nasdaq.com/symbol/snap/recommendations (last visited July 10, 2017).

80.     Alternatively, Plaintiff and members of the Class will rely, in part, upon the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**CAUSES OF ACTION**

**COUNT I**

**Violations of Section 11 of the Securities Act Against the Defendants**

81.     Plaintiff repeats and re-alleges each allegation above as if fully set forth herein.  This Count does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded.  For purposes of asserting this and other claims under the Securities Act, Plaintiff does not allege that the Defendants acted with intentional, reckless or otherwise fraudulent intent.

82.     This Count is asserted against the Defendants for violations of Section 11 of the Securities Act (15 U.S.C. § 77k), on behalf of all Class members who purchased Snap common stock sold in or traceable to the Snap IPO.  The Registration Statement for the IPO contained misrepresentations of material facts and omitted to state material facts required to be stated in order to make the statements contained therein not misleading.

83.     As the issuer of the registered securities, Snap is strictly liable for the misleading statements and omission of material facts described herein.

84.     None of the other Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading..

85.     The Defendants, issued, caused to be issued, and participated in the issuance of materially false and misleading statements to the investing public that

19

were contained in the Registration Statement, and that misrepresented and/or failed to disclose, *inter alia*, the facts set forth above.  As a direct and proximate result of the Defendants' wrongful conduct, the market price for Snap common stock was artificially inflated in the IPO, and Plaintiff and the applicable members of the Class suffered substantial damages in connection with the purchase of Snap common stock during the relevant time period.

86.    In connection with offering and selling of the registered common stock to the public, the Defendants directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mails, and a national securities exchange.

87.    This action was brought within one year after the discovery of the untruthfulness of the statements and omissions or after such discovery should have been made by the exercise of reasonable diligence and within three years after Snap common stock was offered to the public.

88.    Class members did not know, nor in the exercise of reasonable diligence could they have known, that the Registration Statement contained untrue statements of material fact and omitted to state material facts required to be stated or necessary to make the statements particularized above not misleading when they purchased the registered securities.

89.    As a result of the foregoing, the Defendants are liable for violations of Section 11 of the Securities Act to the Plaintiff and the other Class members who purchased the stock sold in or traceable to the Snap IPO.

## COUNT II

### Violations of Section 15 of the Securities Act Against the Individual Defendants

90.    Plaintiff repeats and re-alleges each allegation above as if fully set forth herein.  This Count does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded.  For purposes of asserting this and

1  other claims under the Securities Act, Plaintiff does not allege that the Defendants

2  acted with intentional, reckless or otherwise fraudulent intent.

3       91.    This Count is alleged against the Individual Defendants for violations of

4  Section 15 of the Securities Act (15 U.S.C. § 77o), on behalf of the Plaintiff and the

5  other Class members who purchased Snap common stock sold in or traceable to the

6  Snap IPO.

7       92.    As set forth in Count I herein, Snap is liable pursuant to Section 11 of the

8  Securities Act.  At all relevant times, the Individual Defendants were controlling

9  persons of Snap within the meaning of Section 15 of the Securities Act.  The

10  Individual Defendants served as executive officers and/or directors of Snap prior to

11  and at the time of the IPO as alleged herein.

12       93.    Each of the Individual Defendants was a participant in the violations of

13  Section 11 of the Securities Act alleged in Count I above, based on their having signed

14  the Registration Statement and having otherwise participated in the process that

15  allowed the IPO to be executed.  The Individual Defendants, by virtue of their

16  managerial and/or board positions with the Company, controlled the Company, as

17  well as the content of the Registration Statement, at the time of the IPO.  Each of the

18  Individual Defendants was provided with or had unlimited access to the Registration

19  Statement, and had the ability to prevent its issuance or cause it to be corrected.

20       94.    As a direct and proximate result of the Individual Defendants' wrongful

21  conduct, the market price for Snap common stock was artificially inflated in the IPO,

22  and Plaintiff and the applicable members of the Class suffered substantial damages in

23  connection with the purchase of Snap common stock pursuant to the Registration

24  Statement.

25       95.    This action was brought within one year after the discovery of the

26  untruthfulness of the statements and omissions or after such discovery should have

27

28

been made by the exercise of reasonable diligence and within three years after Snap common stock was offered to the public.

96.     As a result of the aforementioned, the Individual Defendants are liable under Section 15 of the Securities Act, to the same extent that Snap is liable under Section 11 of the Securities Act, to Plaintiff and the other Class members who purchased common stock pursuant or traceable to the Snap IPO.

## COUNT III

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Against Snap and the Individual Defendants**

97.     Plaintiff repeats and re-alleges each allegation above as if fully set forth herein.

98.     This Count is brought under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5), against Snap and the Individual Defendants.

99.     During the Class Period, Snap and the Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder by making the false and misleading statements specified herein, including the statements in SEC filings, presentations, press release, conference calls, and analyst reports concerning DAU growth, whose truth they knowingly or recklessly disregarded when they failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.

100.    Snap and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal non-public, adverse material information about Snapchat's DAU growth and the

Company's operations and financial condition as reflected in the misrepresentations and omissions set forth above.

101. Snap and the Individual Defendants each had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth by failing to ascertain and to disclose such facts even though such facts were available to them, or deliberately refrained from taking steps necessary to discover whether the material facts were false or misleading.

102. As a result of Snap's and the Individual Defendants' dissemination of materially false and misleading information and their failure to disclose material facts, Plaintiff and the Class members were misled into believing that the Company's statements and other disclosures were true, accurate, and complete.

103. Snap is liable for the acts of the Individual Defendants and other Company agents and personnel referenced herein under the doctrine of *respondeat superior*, as those persons were acting as the officers, directors, and/or agents of Snap in taking the actions alleged herein.

104. Plaintiff and Class members purchased or otherwise acquired Snap common stock, without knowing that Snap and the Individual Defendants had misstated or omitted material facts about the Company's operations and financial performance or prospects. In so doing, Plaintiff and Class members relied directly or indirectly on false and misleading statements by Snap and the Individual Defendants, and/or an absence of material adverse information that was known to, or recklessly disregarded by them but not disclosed in their public statements. Plaintiff and Class members were damaged as a result of their reliance on the Snaps' and the Individual Defendants' false statements and misrepresentations and omissions of material facts.

105. At the time of each of Snap's and the Individual Defendants' false statements, misrepresentations and omissions, Plaintiff and Class members were unaware of their falsity and believed them to be true. Plaintiff and the Class would

1  not otherwise have purchased or acquired Snap common stock at the prevailing prices

2  had they known the truth about the matters discussed above.

3       106.   Plaintiff is filing this action within two years after discovery of the facts

4  constituting the violation, including facts establishing scienter and other elements of

5  Plaintiff's Exchange Act claims, and within five years after the violations with respect

6  to Plaintiff's investments.

7       107.   By virtue of the foregoing, Snap and the Individual Defendants have

8  violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

9       108.   As a direct and proximate result of Snap's and the Individual Defendants'

10  wrongful conduct, Plaintiff and the Class have suffered damages in connection with

11  their purchases or acquisitions of Snap common stock.

12                          **COUNT IV**

13  **Violations of Section 20(a) of the Exchange Act Against the Individual**
14                          **Defendants**

15       109.   Plaintiff repeats and re-alleges each allegation above as if fully set forth

16  herein.

17       110.   This Count is asserted against the Individual Defendants for violations of

18  Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), on behalf of all members of the

19  Class.

20       111.   As set forth in Count III, Snap committed a primary violation of Section

21  10(b) of the Exchange Act by knowingly and/or recklessly disseminating materially

22  false and misleading statements and/or omissions throughout the Class Period

23  concerning its DAU growth.

24       112.   Each of the Individual Defendants, by reason of their status as senior

25  executive officers and/or directors of Snap, directly or indirectly, controlled the

26  conduct of the Company's business and its representations to Plaintiff and the Class,

27  within the meaning of § 20(a) of the Exchange Act.  The Individual Defendants

28

directly or indirectly controlled the content of the Company's SEC statements and press releases related to Plaintiff's and the Class's investments in Snap common stock within the meaning of § 20(a) of the Exchange Act.  Therefore, the Individual Defendants are jointly and severally liable for the Company's fraud, as alleged herein.

113.   The Individual Defendants controlled and had the authority to control the content of the Company's SEC statements and press releases.  Because of their close involvement in the every-day activities of the Company, and because of their wide-ranging supervisory authority, the Individual Defendants reviewed or had the opportunity to review these documents prior to their issuance, or could have prevented their issuance or caused them to be corrected.

114.   The Individual Defendants knew or recklessly disregarded the fact that Snap's representations were materially false and misleading and/or omitted material facts when made.  In so doing, the Individual Defendants did not act in good faith.  By virtue of their high-level positions and their participation in and awareness of Snap's operations and public statements, the Individual Defendants were able to and did influence and control Snap's decision-making, including controlling the content and dissemination of the documents that Plaintiff and the Class contend contained materially false and misleading information and on which Plaintiff and the Class relied.

115.   The Individual Defendants had the power to control or influence the statements made giving rise to the securities violations alleged herein, and as set forth more fully above.

116.   As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their purchases or acquisitions of Snap common stock.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

**CLASS ACTION COMPLAINT No. 2:17-cv-5054**

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and statements alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D. Awarding rescissory damages and/or disgorgement in favor of Plaintiff and the other Class members where appropriate against all Defendants, jointly and severally, for all injuries sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and post-judgment interest, as allowed by law;

E. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all triable claims.

Dated:  July 10, 2017            Respectfully submitted,

By: /s/ *Barbara A. Rohr*
      Barbara A. Rohr

Barbara A. Rohr SBN 273353
Email: brohr@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885

Richard W. Gonnello (*pro hac vice* forthcoming)

**CLASS ACTION COMPLAINT No. 2:17-cv-5054**

Email: rgonnello@faruqilaw.com
Sherief Morsy (*pro hac vice* forthcoming)
Email: smorsy@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Shinu Gupta*

**CLASS ACTION COMPLAINT No. 2:17-cv-5054**